**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-25397-CIV-ALTONAGA**

**LOANNYS RODRIGUEZ CALDERIN**,

Petitioner,

v.

**UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT**, *et al.*,

Respondents.
_______________________________________/

**ORDER**

**THIS CAUSE** came before the Court on *pro se* Petitioner, Loannys Rodriguez Calderin's Petition for a Writ of Habeas Corpus under 28 U.S.C. [Section] 2241 [ECF No. 1] and accompanying Memorandum of Law in Support . . . ("Mem.") [ECF No. 1-1]. Petitioner challenges his detention in the custody of U.S. Immigration and Customs Enforcement ("ICE"). (*See generally* Pet.). Respondents filed a Response [ECF No. 6], to which they attached Exhibits A–J [ECF No. 6-1–6-10], and a Notice of Filing Exhibit K [ECF No. 7]. On September 5, 2026, Petitioner filed a Motion to Substitute Proper Respondent . . . ("Motion") [ECF No. 9]. The Court has considered the parties' written submissions, the record, and applicable law. For the following reasons, the Petition is denied, and the Motion is granted in part.

## I. BACKGROUND

***Petitioner's Immigration Proceedings.*** Petitioner is a national and citizen of Cuba. (*See* Resp., Ex. A, Record of Deportable/Inadmissible Alien [ECF No. 6-1] 2–3).[1] On March 5, 2019,

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

ICE took Petitioner into custody and served him with a Notice to Appear. (*See id.*, Ex. B, Notice to Appear [ECF No. 6-2] 2–4; *id.*, Ex. F, Detention History [ECF No. 6-6] 2). The Notice to Appear charged Petitioner with removability under section 237(a)(2)(B)(i) of the Immigration and Nationality Act based on his conviction for trafficking cocaine, in violation of section 893.135(1)(b)1, Florida Statutes. (*See* Notice to Appear 4).

On March 21, 2019, an Immigration Judge ordered Petitioner removed to Cuba, and Petitioner waived his right to appeal. (*See* Resp., Ex. G, Order of the Immigration Judge ("Order of Removal") [ECF No. 6-7] 2). On April 17, 2019, Petitioner was released under an Order of Supervision ("OSUP"). (*See* Detention History 2 (noting Petitioner was "[r]eleased" under "Order of Supervision" (alteration added))). ICE took Petitioner into custody again on June 21, 2026. (*See id.*). According to Deportation Officer Luis A. Crespo, Petitioner was both served with a notice revoking his OSUP and afforded an informal interview that same day — but the revocation was improperly executed. (*See* Notice of Filing . . . , Ex. K, Decl. of Deportation Off. Luis A. Crespo ("Crespo Decl.") [ECF No. 7] ¶ 19).

On July 31, 2026, ICE served Petitioner with a Warning for Failure to Depart. (*See* Resp., Ex. H, Warning for Failure to Depart [ECF No. 6-8] 2–3). On August 5, 2026, ICE served Petitioner with a Notice of Removal identifying Mexico as the country to which it intended to remove him. (*See id.*, Ex. I, Notice of Removal [ECF No. 6-9] 2).

On August 21, 2026, ICE issued another Notice of Revocation of Release, revoking Petitioner's OSUP. (*See id.*, Ex. J, Notice of Revocation of Release ("Revocation Notice") [ECF No. 6-10] 2–3). The Revocation Notice explained that the revocation was appropriate to enforce Petitioner's Order of Removal, scheduled an informal interview to occur that same day, and was personally served on Petitioner at the Krome North Service Processing Center, in Miami, Florida

("Krome"). (*See id.*). ICE officials conducted the interview, during which they explained the reasons for revoking Petitioner's OSUP and gave him an opportunity to respond. (*See* Crespo Decl. ¶ 18).

***The Petition.*** Petitioner filed the instant Petition on August 8, 2026.[2] Liberally construed, the Petition — in conjunction with the Memorandum — raises one ground for relief.[3] Petitioner claims that ICE re-detained him "without adequate notice, evidentiary findings, or an opportunity to be heard[,]" in violation of his Fifth Amendment rights and ICE's regulations. (Pet. 7 (alteration added); *see also* Mem. 1 (alleging "Respondents failed to follow their own regulations")). As relief, he seeks release from custody and an order prohibiting transfer outside the District while this action remains pending.[4] (*See* Pet. 8).

***The Motion.*** In his Motion, Petitioner expressly asserts a claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and seeks several forms of relief. (*See generally* Mot.) First, he asks the Court to substitute the Krome Warden as the proper respondent. (*See id.* 5). Second, he requests leave to amend the Petition to add his *Zadvydas* claim. (*See id.*). Third, he seeks production of the revocation file and supporting exhibits. Fourth, he insists he needs a prompt administrative

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted). "Absent evidence to the contrary, [the Court assumes] that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (alteration added; citation omitted).

[3] "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Although the Petition identifies three grounds for habeas relief (*see* Pet. 6–7), the Court — mindful of Petitioner's *pro se* status — treats the Petition as presenting one ground. In their Response, Respondents construed the Petition as also raising a Fifth Amendment challenge to Petitioner's continued detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Resp. 7–9). The Court views the matter differently. Petitioner neither mentions *Zadvydas* nor argues that his post-removal detention has exceeded the constitutional window. (*See generally* Pet.).

[4] Because the Court denies the Petition, Petitioner's request to enjoin his transfer during the pendency of these proceedings is moot.

revocation hearing or a written explanation of why no hearing is required. (*See id.* 5–6). Fifth, he asks to preserve his ability to supplement his Petition with a *Zadvydas* claim if his detention exceeds six months or removal becomes unlikely. (*See id.* 7).

## II. LEGAL STANDARDS

***Section 2241.*** District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas*, 533 U.S. at 687.

**Pro Se *Pleadings.*** "District courts shall liberally construe *pro se* filings and may re-characterize a *pro se* litigant's motion." *Thompson v. Warden*, No. 21-11438, 2021 WL 4165335, at *1 (11th Cir. Sept. 14, 2021) (citation omitted). Consequently, federal courts "have an obligation to look behind the label of a motion filed by a *pro se* inmate" to determine whether the motion is cognizable under "a different remedial statutory framework." *United States v. Jordan*, 915 F.2d 622, 624–25 (11th Cir. 1990) (citation omitted). Even so, "*pro se* litigants still must conform to procedural rules." *Gendron v. Connelly*, No. 22-13865, 2023 WL 3376577, at *1 (11th Cir. May 11, 2023) (citation omitted).

## III. DISCUSSION

The Court first addresses the Petition's sole ground for relief: that ICE's failure to follow the procedures governing revocation of Petitioner's OSUP renders his present detention unlawful. The Court then addresses Petitioner's Motion and his requests for substitution, leave to amend, additional production of documents, another revocation proceeding, and the preservation of a

future *Zadvydas* claim.

**A. <u>The Petition</u>**

Petitioner contends ICE unlawfully re-detained him "without adequate notice, evidentiary findings, or an opportunity to be heard[.]" (Pet. 7 (alteration added); *see also* Mem. 1–2). To begin, the Court will treat the Petition as asserting that ICE's revocation violated the Fifth Amendment's Due Process Clause, the Administrative Procedure Act ("APA"), and the *Accardi*[5] doctrine. (*See generally* Pet.; Mem.).

Respondents argue the Court lacks jurisdiction to review the discretionary revocation of Petitioner's OSUP and, alternatively, that ICE complied with the applicable procedures. (*See* Resp. 6–8). The Court addresses Respondents' two arguments in turn.

**1. Jurisdiction**

To begin, the Court disagrees with Respondents' jurisdictional arguments. The Eleventh Circuit has explained that "[e]ven when a decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own binding regulations." *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014) (alteration added; quotation marks and citation omitted); *see also Chavez Barrios v. Ripa*, No. 25-cv-22644, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) (stating the court possesses "jurisdiction to adjudicate whether [ICE] complied with [its] own OSUP revocation procedures") (alterations added); *see also Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 1895479, at *3–5 (S.D. Fla. July 8, 2025) (holding that 8 U.S.C. section 1252(g) did not strip the court of jurisdiction to evaluate whether ICE "compl[ied] with the statutory requirements required to revoke an Order of Supervision outlined in 8 C.F.R. [section] 241.4(l)(2)" (alterations added; quotation marks and citation omitted));

[5] *Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

*Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) (recognizing that "district courts . . . have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not" (alteration added; listing cases)). The Court has jurisdiction over Petitioner's claims.

**2. Merits**

Turning to the merits, Petitioner is not entitled to habeas relief based on his re-detention and the revocation of his OSUP. The Court explains.

***The Regulatory Scheme.*** The revocation of release under an order of supervision is governed by two regulatory provisions. Where ICE originally releases an alien pending removal under 8 C.F.R. section 241.4, ICE may revoke release when, among other circumstances, "[i]t is appropriate to enforce a removal order[.]" *Id.* § 241.4(l)(2)(iii) (alterations added). Upon revocation, the alien must be "notified of the reasons for revocation" and "afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond[.]" *Id.* § 241.4(l)(1) (alteration added).[6]

Section 241.4 generally "govern[s] the detention of aliens under a final order of removal", but when ICE initially releases an alien upon determining that there is "no significant likelihood of removal in the reasonably foreseeable future[,]" *Id.* § 241.13(b)(1) (alterations added), the grounds permitted for revocation are narrower. Section 241.13(i) allows revocation and re-detention where the alien "violates any of the conditions of release" or where ICE determines, "on account of changed circumstances, . . . that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* §§ 241.13(i)(1)–(2) (alteration added). The

[6] Although these procedural requirements appear in subsection (l)(1), a court in this District interpreted them to also apply to revocations under subsection (l)(2). *See Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1252 (S.D. Fla. 2025).

alien likewise must "be notified of the reasons for revocation" and provided "an initial informal interview promptly" after re-detention. *Id.* § 241.13(i)(3). The alien may submit evidence contesting the revocation or likelihood of removal, and the revocation review must evaluate disputed facts and determine whether revocation and continued detention are warranted. *See id.*

***Petitioner's Due-Process Claim.*** Petitioner argues ICE denied him due process when officials re-detained him and revoked his OSUP in violation of section 241.13. (*See* Mem. 1–2). The Court disagrees.

To start, section 241.13 could not have governed Petitioner's release. That section "does not apply to . . . [a]liens subject to a final order of removal who are still within the removal period[.]" 8 C.F.R. § 241.13(b)(2)(ii) (alterations added). ICE released Petitioner on April 17, 2019, which was only 27 days after his Order of Removal became final upon his waiver of appeal on March 21, 2019. (*See* Order of Removal 2; Detention History 2); *see also* 8 C.F.R. § 1241.1(b) (providing an order of removal becomes final "[u]pon waiver of appeal by the respondent" (alteration added)). Petitioner was released well within the 90-day removal period, thus falling outside the scope of section 241.13. *See* 8 U.S.C. § 1231(a)(1)(A)–(B)(i) (establishing the 90-day "removal period" as beginning on the "date the order of removal becomes administratively final").

Absent a determination that Petitioner was released because there was no significant likelihood of his removal in the reasonably foreseeable future, the Court analyzes the lawfulness of Petitioner's OSUP revocation under section 241.4(l) — the default provision governing his detention. *See Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 2604573, at *5 (S.D. Fla. Sept. 9, 2025) ("Where no such determination has been made, [section] 241.4 remains the default provision governing aliens detained or released after the removal period." (alteration added; citations omitted)). It follows that revoking Petitioner's OSUP to effectuate his removal was permissible

under that provision. *See* 8 C.F.R. § 241.4(l)(2)(iii).

Next, Petitioner has not shown how ICE failed to comply with section 241.4(l)(1)'s procedural requirements. Of course, Respondents concede that a previously attempted revocation of Petitioner's OSUP on June 21, 2026, was potentially defective. (*See* Resp. 3 n.4). Even so, Petitioner fails to show how that deficiency continues to render his present detention unconstitutional.

"[E]ven where a governmental entity fails to follow[] its own regulations providing for procedural safeguards, it is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced." *Sharma v. Drug Enf't Agency*, 511 F. App'x 898, 902 (11th Cir. 2013) (alterations added; citing *Gov't of the Canal Zone v. Brooks*, 427 F.2d 346, 347–48 (5th Cir. 1970) (per curiam)); *see also Mullen-Cofee v. I.N.S.*, 976 F.2d 1375, 1380 (11th Cir. 1992) (requiring "substantial prejudice" from alleged procedural irregularities (quotation marks and citation omitted)). As relevant here, a later opportunity to be heard may constitute "an adequate post-deprivation remedy available to cure the violation[.]" *Habash v. Warden, Krome Serv. Processing Ctr.*, No. 26-cv-22397, 2026 WL 1217754, at *7 (S.D. Fla. May 5, 2026) (alteration added; citation omitted).

During the pendency of Petitioner's habeas proceedings, ICE reissued the Revocation Notice, personally served Petitioner, and conducted an informal interview, all on August 21, 2026. (*See* Revocation Notice 2–3; Crespo Decl. ¶ 18). The Revocation Notice indicated why ICE revoked Petitioner's release, stating it was necessary to enforce the Order of Removal and invoking ICE's authority to do so. (*See* Revocation Notice 2). It further noted ICE was "seeking a travel document" to effectuate Petitioner's removal to "Mexico and Others" (*id.*), consistent with the previously served Notice of Removal identifying Mexico as the country to which ICE intended to

remove Petitioner (*see* Notice of Removal 2). Additionally, the Revocation Notice advised Petitioner that he could "submit any evidence or information [he] wish[ed] to be reviewed in support of [his] release[.]" (Revocation Notice 3 (alterations added)).

In the Motion,[7] Petitioner characterizes the revocation process as inadequate. (*See generally* Mot.). But he does not dispute Respondents' specific account that ICE personally served him with the Revocation Notice on August 21, 2026, explained the reasons for revoking his OSUP, afforded him an informal interview at which he was physically present, and provided him an opportunity to respond. (*Compare* Resp. 6, *with* Mot. 1–9). Petitioner further fails to identify any evidence that he was prevented from presenting or any contested fact ICE refused to consider during review of his revocation. (*See generally* Mot. 5–7). The record therefore contains no dispute that the Revocation Notice — and the process that followed — comported with section 241.4(l)'s requirements. *See* 8 C.F.R. § 241.4(l)(1) (requiring ICE to notify an alien of the reasons for revocation and afford him a prompt informal interview to afford the alien an opportunity to be heard).

---

[7] The Court addresses two other issues. First, although Petitioner styled the filing as a motion, Petitioner also replies directly to Respondents' Response (*see generally* Mot.); thus, the Motion is liberally construed, in part, as Petitioner's reply.

Second, the record shows that Petitioner received the Response, notwithstanding his claim to the contrary. Petitioner states he was "never served with the Government's [R]esponse" and "never received the exhibits or evidence" submitted with it. (*Id.* ¶ 8 (alteration added)). But the Motion itself belies that assertion, at least as to the Response. In the Motion, Petitioner expressly acknowledges that "Respondents filed a Response" and summarizes the Government's jurisdictional and merits-based arguments. (*Id.* 3).

Respondents moreover certified that they served the Response on Petitioner on August 25, 2026, at Krome — where Petitioner was (and remains) detained. (*See* Resp. 9–10; Mot. 11). The Court therefore finds Petitioner received the Response and had a fair opportunity to address Respondents' contentions in his Motion. To the extent Petitioner failed to respond to an argument or factual assertion made in the Response, any such argument is deemed forfeited. *See Hollis v. Miami-Dade Cnty.*, No. 20-cv-21930, 2022 WL 4124300, at *7 (S.D. Fla. Aug. 10, 2022) ("It is well settled that a party who fails to respond to an argument in her response necessarily forfeits the point." (citation omitted)), *report and recommendation adopted*, 2022 WL 4119753 (S.D. Fla. Sept. 9, 2022).

Petitioner has otherwise failed to show how any defect in the June 21, 2026, attempted revocation prejudiced him enough to cause an ongoing procedural deprivation. *See, e.g.*, *Habash*, 2026 WL 1217754, at *7 ("Petitioner's second interview constitutes an adequate post-deprivation remedy available to cure the violation, such that Petitioner was not wholly deprived of his due process rights." (citation omitted)); *Gonzales Gonzalez v. Warden, Krome Serv. Processing Ctr.*, No. 26-cv-21593, 2026 WL 2212895, at *5 n.1 (S.D. Fla. Aug. 1, 2026) (finding continued detention lawful and denial of the petition warranted where petitioner's OSUP was not revoked until "nearly three months after he was taken into ICE custody" (citation omitted)).

***Petitioner's APA and* Accardi *Claims.*** In his remaining subclaims, Petitioner contends ICE acted arbitrarily or capriciously, in violation of the APA; and that ICE failed to follow its own regulations, in violation of the *Accardi* doctrine.

Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or undertaken "without observance of procedure required by law." 5 U.S.C. §§ 706(2)(A), (D). Petitioner makes no such showing. For the reasons explained, Petitioner has received the process required under section 241.4(l)(1) and has otherwise not shown that his present detention violates the Constitution or applicable regulations. Therefore, "[b]ecause Petitioner was [] treated as the INA [and the Constitution] requires, the [G]overnment has not acted arbitrarily or capriciously." *Habash*, 2026 WL 1217754, at *8 (alterations adopted; other alteration added; quotation marks and citation omitted).

Petitioner's *Accardi* claim likewise fails. Under the *Accardi* doctrine, "agency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984) (quotation marks and citation

omitted). ICE ultimately afforded Petitioner the process required by section 241.4(l) and thus has not facially deviated from its own procedures. Even assuming ICE departed from its regulations during the June 21, 2026, attempted revocation of Petitioner's OSUP, such departure would not entitle Petitioner to immediate release. *See Habash*, 2026 WL 1217754, at *8 (rejecting petitioner's *Accardi* claim and explaining the court "would not grant [petitioner] the extraordinary remedy" of "outright release from custody" even if the agency had departed from its own regulations (alteration added; quotation marks omitted; quoting *Bonachea v. Noem*, No. 26-cv-653, 2026 WL 1096846, at *5 (M.D. Fla. Apr. 23, 2026))).

**B. <u>The Motion</u>**

In the Motion, Petitioner asks for five forms of relief: (1) substitution of Krome's Warden as Respondent; (2) leave to amend the Petition to add a *Zadvydas* claim; (3) production of additional revocation materials; (4) another administrative revocation proceeding; and (5) preservation of a future *Zadvydas* claim. (*See* Mot. 5–7).

***Substitution.*** A habeas challenge to present physical confinement ordinarily must name "the warden of the facility where the prisoner is being held" as the respondent. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Courts may nevertheless "order substitution for the proper respondent[,] as 'denial of a habeas petition for failure to name the proper respondent would give an unreasonably narrow reading to the habeas corpus statute.'" *Mayorga v. Meade*, No. 24-cv-22131, 2024 WL 4298815, at *3 (S.D. Fla. Sept. 26, 2024) (alteration added; quoting *Jackson v. Chatman*, 589 F. App'x 490, 491 n.1 (11th Cir. 2014)). Petitioner's request for substitution of the proper respondent is therefore granted. Because Petitioner is detained at Krome, the Warden of the Krome North Service Processing Center is substituted as Respondent.

***Leave to Amend.*** Next, Petitioner seeks leave to add a claim that his continued detention

violates *Zadvydas*. (*See* Mot. 5, 7). The Court denies this request. A habeas application "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Although leave to amend should be freely given, a district court may deny leave when amendment would be futile. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004). Amendment is considered futile "when the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (quotation marks and citations omitted).

Under 8 U.S.C. section 1231(a)(6), certain aliens subject to final removal orders may "be detained beyond the removal period[.]" 8 U.S.C. § 1231(a)(6) (alteration added). In *Zadvydas*, the Supreme Court concluded six months is a "presumptively reasonable period of detention" pending removal. *Zadvydas*, 533 U.S. at 701. That period "must have expired at the time [the section] 2241 petition was filed in order to state a claim under *Zadvydas*." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (alteration added; footnote call number omitted).

Petitioner's Order of Removal became final on March 21, 2019, when he waived appeal. (*See* Order of Removal 2); *see also* 8 C.F.R. § 1241.1(b) (providing an order of removal becomes final "[u]pon waiver of appeal by the respondent" (alteration added)). ICE released him 27 days later, on April 17, 2019. (*See* Detention History 2). Petitioner was then re-detained on June 21, 2026 — 48 days before he filed the Petition on August 8, 2026. (*See id.*; Pet. 9).

In cases where an alien has been detained, released, and then re-detained, "[a] split of authority exists as to when the six-month period begins." *Vargas v. U.S. Immigr. & Customs Enf't*, No. 26-cv-440, 2026 WL 815843, at *1 (M.D. Fla. Mar. 25, 2026) (alteration added). "Some courts have determined that each period of detention restarts the removal-period clock." *Id.* (listing cases). Others have chosen to aggregate the time spent in detention, concerned the Government

might otherwise engage in gamesmanship. *See, e.g.*, *Krechmar v. Parra*, No. 25-cv-01095, 2025 WL 3620802, at *3 (M.D. Fla. Dec. 15, 2025) (explaining that restarting the *Zadvydas* "six-month clock" upon re-detention "would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every six months"). The Court agrees with the former view.

Assuming Petitioner's periods of detention should be aggregated, he still could not state a *Zadvydas* claim. His Order of Removal became final on March 21, 2019, and ICE released him 27 days later. (*See* Order of Removal 2; Detention History 2). Petitioner filed the Petition only 48 days after ICE had re-detained him. (*See* Detention History 2). Counting both periods of detention, Petitioner spent only 75 days in post-final-order detention when he filed the Petition — well short of *Zadvydas*'s six-month threshold.

Because the six-month time frame had not elapsed when the Petition was filed, Petitioner cannot state a claim under *Zadvydas*. *See, e.g.*, *De La Torre Herrera v. Warden, Baker Cnty. Det. Ctr.*, No. 26-cv-292, 2026 WL 2415553, at *1 (M.D. Fla. Aug. 19, 2026) (dismissing petitioner's *Zadvydas* claim "as premature" where petitioner "had been in ICE custody for 38 days" when he first filed his petition, even though his post-removal detention had since likely "passed the six-month time frame" (citing *Akinwale*, 287 F.3d at 1052)). Since Petitioner's proposed *Zadvydas* amendment would fail to state a claim for habeas relief, amendment would be futile. *See Hall*, 367 F.3d at 1262–63. The Court thus denies Petitioner leave to amend the Petition to add his proposed *Zadvydas* claim.

***Discovery.*** Petitioner asks the Court to order the production of ICE's revocation file and supporting materials from his immigration proceedings. (*See* Mot. 5). As an initial matter, Respondents already produced the relevant materials necessary to resolve the Petition, including

Petitioner's Detention History, Warning for Failure to Depart, Notice of Removal, the Revocation Notice, and a sworn declaration addressing the informal interview. (*See generally* Resp., Exs. F, H–J; Crespo Decl.).

To the extent Petitioner seeks to take discovery of additional revocation-related materials, such request is denied. Habeas discovery requires a showing of "good cause[.]" *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (alteration added; quotation marks omitted; quoting R. Governing § 2254 Cases 6(a)). Good cause is absent where further factual development could not establish an entitlement to relief. *See Ochoa v. United States*, 45 F.4th 1293, 1301 (11th Cir. 2022) (affirming denial of discovery where underlying claim would still be "futile" "even if [the petitioner]'s specific allegations could be proven with the aid of discovery" (alteration added; citation omitted)).

Further factual development concerning Petitioner's revocation would not change the Court's ruling. The Court — even after assuming ICE's June 21, 2026, attempted revocation of Petitioner's OSUP was procedurally deficient — has determined Petitioner's August 21, 2026 Revocation Notice and interview supplied the process that Petitioner's detention required. Petitioner identifies no specific factual allegation concerning his August 21, 2026, revocation proceedings that additional discovery would substantiate. (*See generally* Mot.). Petitioner thus fails to establish good cause for habeas discovery.

***Revocation Proceeding.*** Next, the Court denies Petitioner's request for another revocation proceeding. Again, the Court has determined the Revocation Notice adequately advised Petitioner of the reasons for revocation and the ability to submit evidence for review. ICE conducted the scheduled informal interview, providing Petitioner an opportunity to be heard — all in accordance with section 241.4(l)'s requirements. (*See* Revocation Notice 2–3; Crespo Decl. ¶ 18). As the Petition fails on the merits, Petitioner is not entitled to another revocation proceeding.

***Preservation of Claim.*** Lastly, Petitioner asks the Court to preserve his ability to supplement his *Zadvydas* claim if his detention later exceeds six months or removal becomes unlikely. (*See* Mot. 7). The Court also denies this request. No part of this Order prejudices Petitioner's ability to later assert a ripe *Zadvydas* claim in a new section 2241 petition. *See Akinwale*, 287 F.3d at 1052 ("Because circumstances may ultimately change in Akinwale's situation, we affirm the dismissal without prejudicing Akinwale's ability to file a new [section] 2241 petition in the future[.]" (alterations added; footnote call number omitted)).

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. *Pro se* Petitioner, Loannys Rodriguez Calderin's Petition for a Writ of Habeas Corpus under 28 U.S.C. [Section] 2241 **[ECF No. 1]** is **DENIED**.

2. Petitioner's Motion to Substitute Proper Respondent . . . **[ECF No. 9]** is **GRANTED in part** and **DENIED in part**.

   a. The Motion is **GRANTED**, substituting the Warden of the Krome North Service Processing Center as Respondent. The Clerk of Court shall **AMEND** the case style to substitute the Warden of Krome North Service Processing Center as Respondent and **TERMINATE** United States Immigration and Customs Enforcement and United States Department of Homeland Security as parties.

   b. The Motion is **DENIED** in all other respects.

3. The Clerk is directed to **CLOSE** the case. Final judgment will issue by separate order.

**DONE AND ORDERED** in Miami, Florida, this 23rd day of September, 2026.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**